IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICK PORTER,                              )
                                          )
                                          )        1:20-CV-00238-CCW
              Plaintiff,                  )
                                          )
     v.                                   )
                                          )
DRAFTO CORPORATION,                       )
                                          )
                                          )
              Defendant.                  )

## MEMORANDUM OPINION

Before the Court is Defendant Drafto Corporation's Motion for Summary Judgment. *See*
ECF No. 21. For the reasons that follow, Drafto's Motion will be GRANTED.

I.     **Background**

       A.     **Procedural History**

       Plaintiff Rick Porter filed his Complaint on August 17, 2020. *See* ECF No. 1. In his
Complaint, Mr. Porter claims he was subjected to a hostile work environment on account of his
age, in violation of the Age Discrimination in Employment Act (ADEA) (Count I) and the
Pennsylvania Human Relations Act (Count II), and was discriminated against on the basis of age
when Drafto fired him in 2019, in violation of the ADEA (Count III) and the PHRA (Count IV).
*See generally id.*

       Drafto filed an Answer, *see* ECF No. 7, and the parties proceeded into discovery. The
discovery period closed on April 30, 2021 and the Court set deadlines for filing and briefing
motions for summary judgment. *See* ECF Nos. 17, 20. Drafto then filed its Motion for Summary
Judgment. *See* ECF No. 21. In his Opposition to Drafto's Motion, Mr. Porter withdrew his hostile
work environment claims (Counts I and II). *See* ECF No. 27 at 1 ("Now that discovery is complete,
Plaintiff withdraws his claims of age based hostile environment"). As such, only Mr. Porter's

claims for age discrimination, Counts III and IV, remain.  Drafto's Motion has been fully briefed and is ripe for disposition.

### B.    Relevant Material Facts

The following facts drawn from the parties' concise statements of material fact and responses thereto[1] are undisputed, unless noted otherwise:

Drafto manufactures material handling equipment associated with overhead cranes for industrial and commercial applications.  *See* ECF No. 23 ¶ 9;  ECF No. 29 ¶ 9.  Mr. Porter began working at Drafto in May 2006, and was assigned to the position of shop foreman of the fabrication shop.  *See* ECF No. 23 ¶ 19;  ECF No. 29 ¶ 19.  Mr. Porter was 54 years old when Drafto hired him.  *See* ECF No. 23 ¶ 21;  ECF No. 29 ¶ 21.  The duties of the shop foreman include scheduling jobs and ordering supplies and material;  managing and supervising a team of four to six employees;  and transporting product and materials between the fabrication shop and machine shop using Drafto's company truck.  *See* ECF No. 23 ¶ 22;  ECF No. 29 ¶ 22.  Mr. Porter and Drafto agree that the shop foreman is a management position.  *See* ECF No. 23 ¶ 23;  ECF No. 29 ¶ 23.  Mr. Porter was informed more than once by his supervisor, Mr. Bruce Wesley, that as a supervisor he would be held to a higher standard than non-supervisory employees.  *See* ECF No. 23 ¶ ¶¶ 24, 26–27;  ECF No. 29 ¶¶ 24, 26–27.  Mr. Porter had a lengthy disciplinary record at Drafto, which Drafto contends ultimately caused Drafto to terminate Mr. Porter's employment a few days after an altercation with another employee on August 1, 2019.  *See* ECF No. 23 ¶¶ 81–84;  ECF No. 29 ¶¶ 81–84.

---

[1] *See* ECF Nos. 23 (Drafto's Concise Statement of Material Facts), 29 (Mr. Porter's Response to Drafto's Concise Statement of Material Facts), 30 (Mr. Porter's Statement of Additional Material Facts), and 32 (Drafto's Response to Mr. Porter's Statement of Additional Material Facts).

While the parties disagree about the precise facts surrounding the disciplinary incidents Drafto documented regarding Mr. Porter, there does not appear to be any meaningful dispute that these incidents occurred.  These incidents are as follows:

| Date | Description of Incident |
| --- | --- |
| July 2010 | Drafto disciplined Mr. Porter for using the company vehicle to run personal errands.  ECF No. 23 ¶ 42.  Mr. Porter does not dispute that he used the company truck for personal reasons but argues that he did so in the context of being out on company business in the first place and that he limited his personal use of the vehicle (buying lunch) to his allotted lunch hour.  ECF No. 29 ¶ 42. |
| August 2010 | Drafto disciplined Mr. Porter for yelling and swearing at employees under his supervision.  ECF No. 23 ¶ 45.  In the disciplinary note describing this incident, Mr. Porter's supervisor Mr. Wesley also describes an incident in which Mr. Porter "hung up" on him twice, and then, when Mr. Wesley confronted him about this inappropriate behavior, attempted to damage company equipment.  *See* ECF No. 24-4 at 74.  Mr. Porter does not dispute that he yelled and swore at his subordinates, or that he hung up on Mr. Wesley, but does dispute that he attempted to damage company equipment.  ECF No. 29 ¶ 45.  Mr. Porter maintains that, after the conversation with Mr. Wesley, he simply drove away.  *Id.* |
| June 2014 | Drafto disciplined Mr. Porter for his "hostile attitude" and for "poorly treating employees under his supervision."  ECF No. 23 ¶ 47.  In the record of this disciplinary action, Mr. Wesley noted this was the "sixth or eighth" occasion on which he had spoken to Mr. Porter on this subject.  *Id.* ¶ 48.  Mr. Porter concedes that "there were a few times that he screamed back at employees who were screaming at him," but maintains that "the complaints employees brought to Wesley were not a true accounting of the actual events" and that "Wesley … always accepted the employees' version of events as true and rejected Plaintiff's."  ECF No. 29 ¶ 47. |
| August 2016 | Drafto disciplined Mr. Porter for "talking down to employees under his supervision and complaining in front of hourly employees about his disputes and problems with other employees under his supervision."  ECF No. 23 ¶ 51.  Drafto further notes that "[a]t this time Porter also improperly used two pieces of Drafto equipment, causing damage to both."  *Id.*  Mr. Porter admits that "Wesley discussed with Plaintiff that he was not to talk about any employee to other employees."  ECF No. 29 ¶ 51.  Mr. Porter denies causing damage to company equipment, but appears to concede that he (like "all |

[other] employees") used the "big hyster"[2] improperly (by "put[ting] chunks of steel on the back…when they needed it to pick up more than it [was] designed to lift") and that some old chains had broken when he was using the "little hyster" to "lift[] the edge of the scrap hopper…after it was emptied." *Id.*

Fall 2016      Drafto disciplined Mr. Porter for "lack of professionalism" when he disclosed the salaries of employees working for him. ECF No. 23 ¶ 56. Mr. Porter does not dispute that salary information was disclosed to his subordinates, but contends that he did not disclose the information. ECF No. 29 ¶ 56. Rather, Mr. Porter maintains that another employee saw a paper listing employees' salaries that Mr. Porter had left out on his desk, and that this employee disclosed the salary information. *Id.*

April 2017      Drafto disciplined Mr. Porter for "preparing materials incorrectly on two occasions, resulting in approximately $10,000 in additional costs to Drafto to rework the materials." ECF No. 23 ¶ 58. Mr. Porter does not dispute that the incidents in question occurred; rather, he contends neither incident was his fault. ECF No. 29 ¶ 58. For the first incident, Mr. Porter contends that Drafto did not have equipment capable of performing the job properly at the time; with regard to the second incident, Mr. Porter blames the error on incorrect instructions from the engineering department and faulty drawings from the customer. *Id.*

May 2017      Drafto disciplined Mr. Porter "for his poor attitude and for causing turmoil with other Drafto employees." ECF No. 23 ¶ 59. Mr. Porter does not meaningfully dispute this alleged incident. ECF No. 29 ¶ 59. Indeed, Mr. Porter admits having had a conversation with Mr. Wesley about his behavior towards other employees around this time. ECF No. 23 ¶ 63; ECF No. 29 ¶ 63.

August 2018      Drafto disciplined Mr. Porter for "initiating an altercation" with another employee, in which Mr. Porter swore at the employee and the employee yelled back at Mr. Porter. ECF No. 23 ¶ 64. Mr. Porter does not dispute that the incident in question occurred, but maintains that he said "'Get out of my way,' in a joking manner," and that the other employee responded by yelling and swearing at Mr. Porter. ECF No. 29 ¶ 64. Mr. Porter claims that "[the employee's] version of events were placed in the disciplinary notes"; however, it appears to the Court that both Mr. Porter's and the employee's version of events are recorded in the disciplinary note in Mr. Porter's file. *Id.* ¶ 64; *see* ECF No. 24-4 at 89–90. Furthermore, Mr. Wesley appears to have drafted a separate note regarding the incident for the other employee's

---

[2] It is unclear to the Court exactly what pieces of equipment Mr. Porter is referring to when he mentions the "big hyster" and the "little hyster." That said, the Court notes that Hyster Company is a U.S. manufacturer of forklifts and other materials handling equipment. *See* https://www.hyster.com/en-us/north-america/. In any event, the precise type of equipment is not relevant to the Court's decision on the present Motion.

file.  *See* ECF No. 24-11 at 3 (note reflecting that employee was told his behavior was inappropriate).

January 2019    Drafto disciplined Mr. Porter "for an altercation with maintenance man [Mike] Pomponio about ordering lights for a Drafto vehicle."  ECF No. 23 ¶ 68.  Mr. Porter allegedly cursed at Mr. Pomponio.  *Id.*  Mr. Porter does not dispute that this incident occurred, but claims that "[a]s he was walking away, Plaintiff said, 'Fuck it.  I'll deal with it.'  He did not say 'fuck you' to Pomponio."  ECF No. 29 ¶ 68.

August 1, 2019    Drafto disciplined Mr. Porter for "a confrontation between Porter and Dan Kantz [who held the non-management position of "assembler," ECF No. 23 ¶ 135;  ECF No. 29 ¶ 135] where Porter and Kantz shouted profanities at each other and escalated nearly to the point of blows between the two men."  ECF No. 23 ¶ 73.  Mr. Porter admits that this confrontation occurred, but disputes that the altercation almost came to blows "between" the two men.  ECF No. 29 ¶ 73.  Mr. Porter maintains that Mr. Kantz "raised his fists and came toward Plaintiff, ready to swing.  Plaintiff did not raise his fists."  *Id.*

In addition to the above-listed incidents, Mr. Wesley and other Drafto employees also testified that Mr. Porter was the subject of numerous complaints and reports related to Mr. Porter's conduct and treatment of other employees.  *See* ECF No. 23 ¶¶ 30–40;  ECF No. 29 ¶¶ 30–40.[3]  Indeed, Mr. Wesley said that Mr. Porter had "exponentially" more disciplinary incidents than any other employee.  ECF No. 23 ¶ 72;  ECF No. 29 ¶ 72.  Mr. Porter maintains generally that while he "did, on occasion, respond to antagonizing conduct directed at him, he did not initiate antagonizing conduct."  ECF No. 29 ¶ 29.  Furthermore, Mr. Porter contends that his disciplinary record was, at least in part, the result of a "personal vendetta" dating to at least 2012 that Mr. Wesley had against him.  ECF No. 23 ¶¶ 44, 97;  ECF No. 29 ¶¶ 44, 97.  Indeed, Mr. Porter "agreed that these behaviors

---

[3] Mr. Porter generally concedes that Drafto accurately represents the testimony given by Mr. Wesley and the other employees about Mr. Porter's allegedly "rude" and "inappropriate" behavior.  *See* ECF No. 29 ¶¶ 30–40.  Mr. Porter contends, rather, that (1) he did not instigate altercations with other employees ("Plaintiff testified that while he did, on occasion, respond to antagonizing conduct directed at him, he did not initiate antagonizing conduct");  (2) only two specific employees from the machine shop complained about Mr. Porter to their supervisor, Jim Peters;  and (3) Willard Dolan in fact testified that Mr. Porter was the antagonist only "[m]ost of the time" (rather than *all* of the time, as implied by Drafto) and that "what he witnessed was Porter and the other individuals 'hollering at each other.'"  *Id.* at ¶¶ 33, 35, and 40.

[*i.e.*, Mr. Wesley's alleged antagonisms towards Mr. Porter] dated well prior to any discussions regarding retirement, or any insinuation regarding his age." ECF No. 23 ¶ 99; ECF No. 29 ¶ 99.

In August 2016, after Mr. Wesley broached the subject, Mr. Porter informed Mr. Wesley that Mr. Porter would be retiring in July 2017, when he would be 65 years old. ECF No. 23 ¶ 86; ECF No. 29 ¶ 86. Mr. Porter testified that he believed Mr. Wesley was "pressuring" him to retire, because Mr. Wesley inquired about his retirement plans on at least two to three other occasions. ECF No. 23 ¶ 87; ECF No. 29 ¶ 87. On May 2, 2017, Mr. Wesley again asked Mr. Porter about his retirement plans, "and [offered] him a part-time position driving the company truck." ECF No. 23 ¶ 90; ECF No. 29 ¶ 90.[4] On May 3, 2017, Mr. Porter provided a letter to Mr. Wesley "indicating his intention to continue working until his seventieth birthday on October 2, 2021." ECF No. 23 ¶ 95; ECF No. 29 ¶ 95. The May 2017 disciplinary incident happened around this time, after which, Mr. Wesley informed Mr. Porter that (1) Mr. Wesley had intended to fire Mr. Porter in 2016 for disciplinary reasons but did not because of Mr. Porter's stated intention of retiring in 2017 and (2) "that since Porter had decided to continue working, he must clearly understand that he could no longer cause problems with other Drafto employees." ECF No. 23 ¶ 62–63; ECF No. 29 ¶ 62–63.

Neither party identifies that any other discussion regarding Mr. Porter's retirement occurred prior to his termination on August 5, 2019. Mr. Porter, born in 1951, was about 68 years old when he was fired. *See* ECF No. 23 ¶ 18; ECF No. 29 ¶ 18. Since Mr. Porter's termination, Drafto has not hired or promoted anyone to Mr. Porter's former position as fabrication shop foreman. ECF No. 23 ¶ 137; ECF No. 29 ¶ 137. However, Drafto has distributed Mr. Porter's former duties to three other employees. ECF No. 23 ¶ 138; ECF No. 29 ¶ 138. First, Mr. Porter's

---

[4] The record here reflects that two other Drafto employees, after retiring from full-time work, returned to work for Drafto in a part-time capacity. *See* ECF No. 23 ¶¶ 148–155; ECF No. 29 ¶¶ 148–155.

truck driving duties (which require the driver to have a CDL) have been filled by Mr. Pomponio. ECF No. 23 ¶ 139;  ECF No. 29 ¶ 139.  Mr. Pomponio, born in 1965, is about 14 years younger than Mr. Porter.  ECF No. 23 ¶ 140;  ECF No. 29 ¶ 140.  Supervision of day-to-day activities in the fabrication shop has been given to Eric Pedley, who, in addition to his role as a welder, was promoted to "team leader" in October of 2020.  ECF No. 23 ¶ 141–142;  ECF No. 29 ¶ 141–142. Mr. Pedley, born in 1963, is about 12 years younger than Mr. Porter.  ECF No. 23 ¶ 143;  ECF No. 29 ¶ 143.  Finally, Tyler Huth, an engineering supervisor, has taken on helping "to set schedules, attend meetings, and relay information back and forth between the fabrication sh[o]p, machine shop, and main office."  ECF No. 23 ¶ 144;  ECF No. 29 ¶ 144.  Mr. Huth, born in 1987, is about 36 years younger than Mr. Porter.  ECF No. 23 ¶ 147;  ECF No. 29 ¶ 147.

## II.    Standard of Review

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Razak v. Uber Techs., Inc.,* 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *NAACP v. N. Hudson Reg'l Fire & Rescue,* 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with 'the moving party regardless of which party would have the burden of persuasion at trial.'"

*Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (quoting *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987)).  Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 586–87.  Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted).  But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence;  there must be evidence on which the jury could reasonably find for the [non-movant]."  *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations omitted).

## III.    Discussion

As noted above, Mr. Porter has two remaining claims:  discrimination on the basis of age in violation of (1) the ADEA (Count III) and (2) the PHRA (Count IV).  Drafto has moved for summary judgment in its favor on both counts.  Because the United States Court of Appeals for the Third Circuit "has determined that the interpretation of the PHRA is identical to that of federal anti-discrimination laws, including the ADEA," the Court will address the claims together.  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998) ("There is no need to differentiate between . . . ADEA and PHRA claims because . . . the same analysis is used for both.")).

### A.    Legal Framework

"The ADEA prohibits employers from 'discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'"  *Willis,* 808 F.3d at 643–44 (quoting 29 U.S.C. § 623(a)(1)).  A plaintiff in an ADEA case must establish, by a preponderance of the evidence, that age was the "but-for" cause of the complained-of adverse employment action.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).  To prove such claims, a plaintiff may rely on either direct or circumstantial evidence of discrimination.  Where, as here, a plaintiff relies on circumstantial evidence, courts apply the familiar *McDonnell Douglas* burden-shifting framework.  *See Willis*, 808 F.3d at 644 (citing *Keller v. Orix Credit All., Inc*., 130 F.3d 1101, 1108 (3d Cir. 1997) (reaffirming the application of a "slightly modified version of [*McDonnell Douglas*] in ADEA cases"));  *see also*, ECF No. 28 at 2 (acknowledging that "plaintiff is relying on circumstantial evidence to prove discrimination").

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination by pointing to evidence supporting the following elements:  (1) the plaintiff is at

least forty years old;  (2) the plaintiff was qualified for the position in question;  (3) the plaintiff suffered an adverse employment action;  and (4) the plaintiff was ultimately replaced by someone sufficiently younger so as to support an inference of discrimination.  *See Willis*, 808 F.3d at 644 (citing *Burton,* 707 F.3d at 426).  "Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'"  *Willis*, 808 F.3d at 644 (citing *Pivirotto v. Innovative Sys., Inc*., 191 F.3d 344, 352 (3d Cir. 1999)).

Producing evidence sufficient to satisfy the elements of a prima facie case creates an "inference of unlawful discrimination," *Pivirotto*, 191 F.3d at 357, which an employer must then rebut at the next step of the *McDonnell Douglas* analysis by "articulat[ing] a legitimate nondiscriminatory reason for the adverse employment action."  *Jones v. Sch. Dist. of Phila*., 198 F.3d 403, 412 (3d Cir. 1999) (citing *Keller*, 130 F.3d at 1108).  To meet its burden, "the employer must provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons."  *Willis*, 808 F.3d at 644 (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).

If the employer meets its burden at the second step, "[t]he third step in the *McDonnell Douglas* analysis shifts the burden of production back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." *Burton*, 707 F.3d at 426–27 (citing *Fuentes*, 32 F.3d at 764–65).  To make this showing of pretext and defeat summary judgment, a plaintiff must point to evidence that would allow a factfinder to reasonably either:   "'(1) disbelieve the employer's articulated legitimate reasons;  or (2) believe that an invidious discriminatory reason was more likely than not

a motivating or determinative cause of the employer's action.'" *Id.* at 427 (quoting *Fuentes*, 32 F.3d at 764).

> **B.    Mr. Porter has established a *prima facie* case of age discrimination**

Drafto concedes that Mr. Porter can establish the first three elements of a prima facie case of age discrimination.  ECF No. 22 at 11.  However, Drafto contends that Mr. Porter cannot establish the fourth and final prong—that Mr. Porter can point to evidence (such as Drafto replacing him with a younger employee) sufficient to support an inference of discrimination.  Mr. Porter responds that, following his termination, Drafto reassigned his duties to three other employees, all younger than Mr. Porter.  Mr. Porter also asserts that courts have found similar fact patterns to be sufficient for purposes of establishing a prima face case of discrimination.

To satisfy the fourth element of his prima facie case of age-based discrimination—which the Supreme Court has said "is not onerous," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)—Mr. Porter must make "some showing of disparate and age-based treatment, either through more favorable treatment of younger workers, or by some other means." *Chase v. Frontier Commc'ns. Corp.*, 361 F.Supp. 3d 423, 436 (M.D. Pa. 2019).  Viewing the facts in the light most favorable to Mr. Porter, the Court concludes that he has met his burden on the fourth prong of the *prima facie* case.  Specifically, Mr. Porter points out that after he was terminated, Drafto distributed his duties to three employees, who are 12, 14, and 36 years younger than Mr. Porter.  Under Third Circuit precedent, this is sufficient to establish the fourth and final piece of a *prima facie* case of age discrimination.  *See Pivirotto*, 191 F.3d at 356–57 (noting that "a discharged age-discrimination plaintiff who presented evidence that a younger employee assumed his responsibilities when his employer decided not to replace him had met his prima facie burden.") (citing *Torre v. Casio, Inc.*, 42 F.3d 825, 831 (3d Cir. 1994)).

**C.    Drafto has put forth a legitimate, non-discriminatory reason for terminating Mr. Porter's employment**

Drafto has met its burden of production at step two of the *McDonnell Douglas* analysis by coming forward with evidence supporting its proffered legitimate, non-discriminatory reason for terminating Mr. Porter's employment.   "This burden is 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason."   *Burton*, 707 F.3d at 426 (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)).

Here, Drafto contends that it fired Mr. Porter because of his long history of disciplinary problems, which ultimately culminated in the August 1, 2019 altercation between Mr. Porter and Mr. Kantz.  This is sufficient for Drafto to meet its burden at the second step of the *McDonnell Douglas* analysis.

**D.    Mr. Porter has not pointed to evidence from which a reasonable factfinder could conclude that Drafto's proffered reason for terminating his employment was pretextual**

Finally, at the last step of the *McDonnell Douglas* analysis, Mr. Porter must present evidence that would either (1) allow a factfinder to disbelieve Drafto's proffered legitimate nondiscriminatory reason for taking adverse action or (2) allow a fact finder to believe that unlawful discrimination was more likely than not the reason for the employer's action.  *See Willis*, 808 F.3d at 644–45.

To meet his burden under the first method, a plaintiff's evidence "'must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence."'"  *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 765).  Thus, "[t]o

discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765.  The second method of proving pretext, on the other hand, requires a plaintiff "to point to evidence that would allow a factfinder to believe that an invidious discriminatory reason was 'more likely than not a motivating or determinative cause' of the employer's action." *Willis*, 808 F.3d at 645.  This evidence should have "'sufficient probative force' so as to allow the factfinder to 'conclude by a preponderance of the evidence that age was a motivating or determinative factor.'" *Id.* (quoting *Simpson v. Kay Jewelers*, 142 F.3d 639, 644–45 (3d Cir. 1998)).  Here, Mr. Porter cannot make either showing.

In short, Mr. Porter has presented no evidence—aside from his subjective belief that Mr. Wesley's alleged "vendetta was because Wesley wanted rid of Plaintiff because of Plaintiff's age," ECF No. 29 ¶ 98—to overcome Drafto's proffered legitimate reason.  This is insufficient to survive summary judgment.  *See Ekhato v. Rite Aid Corp.,* 529 Fed. App'x. 152, 156 (3d Cir. 2013) ("[Plaintiff's] subjective belief that the decision to terminate her employment was discriminatory is insufficient" to show pretext) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 414 (3d Cir. 1999)).  Even viewing the facts in the light most favorable to Mr. Porter, as we must, he merely disputes immaterial details of the various disciplinary incidents recorded by Mr. Wesley—*e.g.* who actually instigated an incident, whether he said "fuck it" or "fuck you"—while also (1) tacitly conceding that those incidents occurred and (2) agreeing that, as a manager, he understood that he would be held to a higher standard of conduct than the employees he supervised.  *See, e.g.*, ECF No. 29 ¶¶ 64, 68.  This falls well short of demonstrating either the weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions necessary for a rational factfinder to conclude

Drafto's proffered legitimate reason is unworthy of credence *or* that discriminatory animus was more likely than not the real motivation behind Drafto's decision to fire Mr. Porter.  *See Burton*, 707 F.3d at 427;  *Willis*, 808 F.3d at 644–45.

Accordingly, because Mr. Porter has not pointed to evidence sufficient to raise a genuine question of fact on the issue of pretext, Drafto's Motion will be granted.

**IV.     Conclusion**

For the foregoing reasons, Defendant Drafto Corporation's Motion for Summary Judgment will be granted.

DATED this 23rd day of November, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record

14